# EXHIBIT A

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2913 |

*Breathe DC v. JUUL Labs Inc.*, No. 20-cv-00619 (D.D.C. 2020)

**MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-24)**

Pursuant to Rule 7.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Plaintiff Breathe D.C. respectfully moves the Judicial Panel on Multidistrict Litigation for an order vacating the Condition Transfer Order (CTO-24), as it relates to *Breathe DC v. JUUL Labs Inc.*, No. 20-cv-00619 (D.D.C. 2020).

This motion is based on the accompanying brief and schedule, the pleadings and papers filed herein, and such other and further matters as may be presented to this Panel at the time of any hearing.

Dated: March 23, 2020                                    Respectfully submitted,

**RICHMAN LAW GROUP**                          **ACTION ON SMOKING & HEALTH**

*/s/ Kim E. Richman*                                      */s/ Chris Bostic*

Kim E. Richman (D.C. Bar No. 1022978)       Chris A. Bostic (D.C. Bar No. 480251)
Randal K. Wilhite (*pro hac vice* forthcoming)  Kelsey Romeo-Stuppy (*pro hac vice* forthcoming)
8 W. 126th Street                                          1250 Connecticut Ave, NW, 7th Fl.
New York, NY 11207                                      Washington, DC 20036
T: (718) 705-4579 | F: (718) 228-8522         T: (202) 659-4310
krichman@richmanlawgroup.com                bosticc@ash.org
rwilhite@richmanlawgroup.com                   romeo-stuppyk@ash.org

*Attorneys for Plaintiff*

BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: JUUL LABS, INC., MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | MDL No. 2913 |

*Breathe DC v. JUUL Labs Inc.*, No. 20-cv-00619 (D.D.C. 2020)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE
<u>CONDITIONAL TRANSFER ORDER (CTO-24)</u>**

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................. 1

BACKGROUND .......................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    I.    Breathe DC's Lawsuit Does Not Involve Any of the Complex Factual Issues Involved in the MDL. ........................................................................... 5

        A.    The MDL Claims Involve Complex Scientific Disputes. ........................ 5

        B.    None of the MDL's Complex Issues Are at Issue in *Breathe DC v. JUUL*. ........................................................................................................ 8

    II.    Breathe DC's Lawsuit Is Not a Putative Class Action or Personal-Injury Action, and Seeks Only Injunctive Relief. ............................................... 10

CONCLUSION ........................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*In re 21st Century Productions, Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271 (J.P.M.L. 1978) .................................................................................................................................... 5
*In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811 (J.P.M.L. 1980) ............................................. 4
*In re Mortgage Indus. Foreclosure Litig.*, 996 F. Supp. 1379 (J.P.M.L. 2014) .............................. 5
*In re Truck Accident Near Alamagordo*, 387 F. Supp. 732 (J.P.M.L. 1975) .................................. 4
*In re: JUUL Labs, Inc. Product Litig.*, No. 18-cv-2499 (N.D. Cal. Jan. 30, 2019) ......................... 6
*West v. JUUL*, No. 19-cv-505 (M.D. Ala. July 16, 2019) ............................................................... 6
*Williams v. Gerber Prods. Co.*, 523 F.3d 934 (9th Cir. 2008) ........................................................ 9

**STATUTES**

28 U.S.C. § 1331 ............................................................................................................................. 4
28 U.S.C. § 1332(a) ........................................................................................................................ 4
28 U.S.C. § 1407(a) ..................................................................................................................... 4, 5
District of Columbia Code § 28-3904 ............................................................................... 1, 2, 3, 10
District of Columbia Code § 28-3905(k)(1) .................................................................................. 3

**OTHER AUTHORITIES**

District of Columbia Practice Manual, Consumer Protection, (2015 Ed.) .................................... 10

**RULES**

Rules of Procedure for the Judicial Panel on Multidistrict Litigation Rule 7.1(f) ........................... 1
Super. Ct. Civ. R. 26 ....................................................................................................................... 4
Super. Ct. Civ. R. 33 ....................................................................................................................... 4
Super. Ct. Civ. R. 34 ....................................................................................................................... 4

**TREATISES**

17 Georgene Vairo *et al.*, Moore's Federal Practice ¶ 112.05[2] (3d ed. 2020) ............................. 5

Pursuant to Rule 7.1(f) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Plaintiff Breathe DC files this Memorandum of Law in Support of its Motion to Vacate Conditional Transfer Order (CTO-24). Notice of Plaintiff Breathe DC's opposition to CTO-24 was filed on March 10, 2020.

## PRELIMINARY STATEMENT

On October 2, 2019, the JPML created this MDL for federal "putative class actions and individual personal injury cases" against Defendant JUUL Labs, Inc., ("JUUL" or "JLI") that involve "allegations that JLI has marketed its JUUL nicotine delivery products in a manner designed to attract minors, that JLI's marketing misrepresents or omits that JUUL products are more potent and addictive than cigarettes, that JUUL products are defective and unreasonably dangerous due to their attractiveness to minors, and that JLI promotes nicotine addiction." (Transfer Order, ECF No. 144.)

The case that is the subject of CTO-24, *Breathe DC v. JUUL Labs, Inc.*, No. 20-cv-00619 (D.D.C. 2020), does not fit the categories of cases designated for transfer in the MDL, making transfer inappropriate because neither judicial economy nor substantial justice would be promoted by coordinated or consolidated pretrial proceedings:

***First***, *Breathe DC v. JUUL* is not a putative class action or an individual personal injury action. *Breathe DC v. JUUL* is a private-attorney-general action brought by a non-profit organization on behalf of the interests of the general public of the District of Columbia, under a statute specific to that population, the District of Columbia Consumer Protection Procedures Act (DC CPPA).

***Second***, unlike the cases in the MDL, monetary damages are not at issue in *Breathe DC v. JUUL*, an action that seeks only injunctive relief.

1

***Third***, Plaintiff Breathe DC's claim under the DC CPPA does not involve allegations that JUUL has marketed its products to attract minors, that its products are defective and unreasonably dangerous due to their attractiveness to minors, or that JUUL promotes nicotine addiction. Instead, Breathe DC alleges that the labeling of cartridges for the JUUL electronic cigarette, called JUULpods, as either "5.0% nicotine strength" or "3.0% nicotine strength" tends to lead consumers to believe that JUULpods contain low amounts of nicotine and/or deliver only a fraction of the amount of nicotine delivered by combustible cigarettes. Breathe DC alleges that this labeling deceives District of Columbia consumers because JUULpods contain among the highest concentrations of nicotine of commercially available electronic cigarette products, and a single "5.0% nicotine strength" JUULpod (which are available in packs of two or four) delivers as much nicotine than an entire pack of 20 combustible cigarettes. Unlike the false advertising claims involved in the MDL, Breathe DC's claim does not turn on whether JUUL products are more addictive than cigarettes, a fiercely disputed medical and scientific question that will necessitate extensive expert discovery in the MDL. As to the District of Columbia claim at issue in *Breathe DC v. JUUL*, the relevant fact is incontestable: that JUULpods contain among the highest concentrations of nicotine of commercially available electronic cigarette products. This high concentration results from a design innovation heralded in JUUL's patents and promoted in the press by JUUL's engineers (*see generally* Complaint ("Compl.") at ¶¶ 36-49, ECF No. 405-2); JUUL itself discloses (on the back of the packaging of "5.0% nicotine strength" JUULpods) that the amount of nicotine delivered by one JUULpod is "[a]pproximately equivalent to about 1 pack of cigarettes" (*id.* ¶ 28). Breathe DC's claim turns on the sole issue of whether JUUL's "5.0% nicotine strength" or "3.0% nicotine strength" representations tend to mislead reasonable consumers in the District of Columbia in light of the comparison to conventional nicotine products. As such, little to no overlap will exist between

2

pretrial proceedings in *Breathe DC v. JUUL Labs*, which rests upon language in the DC CPPA, and those in cases in the MDL.

## BACKGROUND

Breathe DC filed its Complaint on January 17, 2020 in the Superior Court of the District of Columbia. Breathe DC brought the action on behalf of the general public of the District of Columbia, as a private attorney general pursuant to District of Columbia Code § 28-3905(k)(1), to redress JUUL's practice of labeling and marketing JUULpods as either "5.0% nicotine strength" or "3.0% nicotine strength." (Compl. at ¶¶ 5, 11.) The Complaint alleges that that these representations constitute omissions and/or the use of ambiguity as to material facts that tend to mislead consumers in violation of several provisions found in District of Columbia Code § 28-3904. (*Id.* ¶ 10.) Specifically, the Complaint alleges that these representations tend to lead consumers to believe that JUULpods contain low amounts of nicotine, and/or that JUULpods deliver only a fraction of the amount of nicotine delivered by combustible cigarettes. Contrary to the representations, JUULpods in fact contain among the highest concentrations of nicotine of commercially available electronic cigarette products, and a single "5.0% nicotine strength" JUULpod (which are available in packs of two or four) delivers as much nicotine than an entire pack of 20 combustible cigarettes. (*Id.* ¶¶ 6-11.) Breathe DC seeks declaratory and injunctive relief on behalf of itself and the general public of the District of Columbia pursuant to the DC CPPA, which makes it an unlawful trade practice to, among other things, use innuendo or ambiguity as to a material fact which has a tendency to mislead or fail to state a material fact where such failure has a tendency to mislead, "whether or not any consumer is in fact misled, deceived or damaged thereby." (Compl. ¶¶ 61-71, Prayer for Relief.) Breathe DC does not seek money damages, and the declaratory and injunctive relief it seeks will be limited to the District of Columbia.

3

On February 11, 2020, pursuant to Rules 26, 33, and 34 of the D.C. Superior Court Rules of Civil Procedure, Breathe DC served upon JUUL written interrogatories and requests for production of documents. On March 2, 2020, JUUL filed a Notice of Removal, contending incorrectly that the U.S. District Court for the District of Columbia had federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* Notice of Removal ("Notice"), *Breathe DC v. JUUL Labs*, No. 20-cv-00619). The same day, JUUL filed a Notice of Potential Tag-Along Action concerning *Breathe DC v. JUUL Labs*. (ECF No. 405.) On March 3, 2020, the JPML rendered CTO-24. (ECF No. 407.)

On March 6, 2020, Breathe DC filed a Motion to Remand *Breathe DC v. JUUL Labs* to District of Columbia Superior Court. (Motion to Remand, *Breathe DC v. JUUL Labs*, No. 1:20-cv-00619.) On March 9, 2020, JUUL filed a Motion to Stay Proceedings Pending MDL Transfer in *Breathe DC v. JUUL Labs*, No. 20-cv-00619. On March 10, 2020, Breathe DC filed Notice of Opposition to CTO-24. (ECF No. 429.) Breathe DC now moves to vacate CTO-24.

## ARGUMENT

For transfer of a pending civil action to a MDL to be appropriate, (1) the action must involve "one or more common questions of fact," (2) transfer must be "for the convenience of parties and witnesses," and (3) transfer must "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "[A] mere showing that common questions of fact exist amongst the actions for which Section 1407 treatment is proposed is not sufficient, in and of itself, to warrant transfer by the Panel. The other criteria of the statute must also be satisfied." *In re Truck Accident Near Alamagordo*, 387 F. Supp. 732, 733 (J.P.M.L. 1975).

The party seeking transfer has the burden of showing that the statutory requirements for transfer are met. *See In re Chiropractic Antitrust Litig.*, 483 F. Supp. 811, 813 (J.P.M.L. 1980); *In*

4

*re 21st Century Productions, Inc. "Thrilsphere" Contract Litig.*, 448 F. Supp. 271, 273 (J.P.M.L. 1978). JUUL cannot meet this burden here, because any common issues of fact are minimal, and there is no basis on which to contend that transferring the action to the MDL will "promote the just and efficient conduct of" the actions. 28 U.S.C. § 1407(a).

**I.      Breathe DC's Lawsuit Does Not Involve Any of the Complex Factual Issues Involved in the MDL.**

The Judicial Panel on Multidistrict Litigation denies transfers when there are few common questions of sufficient complexity or degree, because there would be little or no advantage or efficiencies gained by ordering coordinated or consolidated pretrial proceedings. *See* 17 Georgene Vairo *et al.*, Moore's Federal Practice ¶ 112.05[2] (3d ed. 2020); *see also, e.g.*, *In re Mortgage Indus. Foreclosure Litig.*, 996 F. Supp. 1379, 1379-80 (J.P.M.L. 2014) ("[T]hese actions involve relatively straightforward contractual interpretation questions under different state laws. They are not so complex, nor the accompanying discovery so time-consuming, as to merit centralization."). As set forth below, because *Breathe DC v. JUUL Labs* does not involve any of the complex factual issues involved in the MDL, there would be little to no advantage gained by consolidating its pretrial procedures with those of the other cases in the MDL.

**A.      The MDL Claims Involve Complex Scientific Disputes.**

The MDL cases allege that JUUL's representations that each "JUULpod is approximately equivalent to 1 pack of cigarettes or 200 puffs"[1] are literally false because the JUUL electronic nicotine delivery system (ENDS), or the JUUL device combined with a JUULpod, actually delivers substantially more nicotine to users per JUULpod than a pack of combustible cigarettes delivers.

---

[1] This statement has appeared with little variation on the back of packages of JUULpods, on JUUL's website, and in JUUL's marketing materials. *See, e.g.*, Truth Initiative, *How Much Nicotine Is in JUUL?*, https://truthinitiative.org/research-resources/emerging-tobacco-products/how-much-nicotine-juul (last accessed Mar. 23, 2020) (archived screenshot of JUUL website).

5

*See, e.g.*, Consolidated Amended Class Action Complaint ¶¶ 59-65, ECF 1-10, *In re: JUUL Labs, Inc. Product Litig.*, No. 18-cv-2499 (N.D. Cal. Jan. 30, 2019) (alleging that JUUL's representations "that a single JUULpod contains an amount of nicotine equivalent to about a pack of cigarettes" are deceptive because "data indicate that each JUULpod delivers significantly more nicotine than a pack of cigarettes" delivers); Complaint ¶ 81, ECF 1-8, *West v. JUUL*, No. 19-cv-505 (M.D. Ala. July 16, 2019) (alleging that JUUL "has continuously falsely represented that each pod contains only as much nicotine as a pack of cigarettes").

These allegations of false and deceptive advertising in the MDL are premised on complicated analyses and comparisons of the amount of nicotine delivered to humans by inhaling aerosol of JUUL's proprietary nicotine salt formulations, relative to inhaling smoke from combustible cigarettes. For example, the plaintiffs in *In re: JUUL Labs, Inc. Product Litigation* allege:

> 62. Typically, a cigarette that delivers around one milligram of nicotine in smoke retains about 14-20 milligrams of nicotine in the unsmoked rod . . . for an overall delivery of 5-7% of the cigarette's actual nicotine content. A study by the Center for Disease Control found that in "commercial cigarette brands, nicotine concentrations ranged from 16.2 to 26.3 mg nicotine/g tobacco (mean 19.2 mg/g; median 19.4 mg/g)." [Tameka Lawler et al., *Surveillance of Nicotine and pH in Cigarette and Cigar Filler*, 3 (Supp. 1) Tob. Regul. Sci., 101-116 (Apr. 2017).] Assuming an average of 19 milligrams of nicotine per cigarette, an average pack of cigarettes contains 380 milligrams of nicotine, or six times as much nicotine as the 62 milligrams reported for each JUULpod. Yet the average pack would be expected to deliver only 5-7% (19-27 mg) of its nicotine content to the user. In line with this expectation, a study of thousands of smokers found smokers intaking between 1.07 to 1.39 milligrams per cigarette (21.4-27.8 mg per pack). [Martin J. Jarvis et al., *Nicotine Yield from Machine-Smoked Cigarettes and Nicotine Intakes in Smokers: Evidence from a Representative Population Survey*, JNCI: Journal of the National Cancer Institute, Volume 93, Issue 2, 17 January 2001, Pages 134–138.] This is less than half of the amount of nicotine contained in a JUULpod (i.e., 2 mg per "cigarette" based on JUUL's stated concentration, or 200 µg per puff assuming 100% delivery). Even with the slightly lower efficiency of delivery demonstrated in studies like Reilly (about 82%, for averages of 164 µg per puff), this amounts to a substantially higher amount of nicotine that a human will absorb from a JUULpod than from smoking a pack of cigarettes.

6

>63. JUUL's statement in its advertisements that each JUULpod contains about as much nicotine as a pack of cigarettes is therefore literally false and likely to mislead, because the . . . actual amount of nicotine consumed via JUULpod is as much as twice as high as that via cigarettes.
>
>64. Further, while a pack of cigarettes contains 20 cigarettes which each have to be separately lit, the JUUL can be inhaled continuously, and often can be used indoors without detection by others, a feature that JUUL promoted heavily in its advertisements, eliminating the need for smoking breaks. Thus, the device design leads users to intake far more nicotine than would occur with cigarettes.

Consol. Compl. at ¶¶ 62-64 (internal citation omitted).

JUUL will undoubtedly contest this analysis, pointing out that the scientific studies that have so far evaluated the amount of nicotine delivered to JUUL users have not clearly concluded that JUUL users absorb more nicotine from the equivalent of one JUULpod than smokers absorb from the equivalent of one pack.[2] The variability in these studies' findings is likely due in significant part to the "puffing regimes" or "puffing protocols" utilized by different studies.[3] This variation mirrors

---

[2] Esther E. Omaiye et al., *High Nicotine Electronic Cigarette Products: Toxicity of JUUL Fluids and Aerosols Correlates Strongly with Nicotine and Some Flavor Chemical Concentrations*, 32 Chemical Research in Toxicology 1058 (2019) (finding aerosol created by JUUL ENDS to deliver 28.84 mg of nicotine per JUULpod, while liquid solutions in JUULpods was found to contain 42.63 mg of nicotine per JUULpod); Samantha M. Reilly et al., *Free Radical, Carbonyl, and Nicotine Levels*, 21 Nicotine & Tobacco Research 1274 (2019) (finding aerosol created by JUUL ENDS to deliver 164 μg of nicotine per puff, or 32.8 mg of nicotine per 200 puffs); Maciej L. Goniewicz et al., *High Exposure to Nicotine Among Adolescents Who Use JUUL and Other Vape Pod Systems ('Pods')*, 28 Tobacco Control 676 (2019) (finding aerosol created by JUUL ENDS to deliver 83 μg of nicotine per puff, or 16.7 mg of nicotine per 200 puffs); Soha Talih et al., *Characteristics and Toxicant Emissions of JUUL Electronic Cigarettes*, 28 Tobacco Control 678 (2019) (finding aerosol created by JUUL ENDS to deliver 137 μg of nicotine per puff, or 27.33 mg of nicotine per 200 puffs).

[3] *Compare* Omaiye et al. at 1059 (using Cole-Parmer Masterflex L/S peristalic pump, 100 milliliter puff volumes, and puff durations of 4.3 seconds at 60 second intervals), *with* Reilly et al. at 1275 ("Aersols were generated using a Human Puff Profile Cigarette Smoking Machine . . . using a custom-built mouthpiece. Each e-cig puff had a puff volume of 75 mL, puff duration of 2.5 s, and interpuff interval of 30 s. This puff profile is based on the CORESTA method 19 with modifications (increased volume and shortened puff duration) made in order to achieve an adequate flow rate to activate this device"), Goniewicz et al. at 676 (using "smoking machine," 70 milliliter puff volumes, and puff durations of 2 seconds at 10 second intervals), *and* Talih et al. at 678-680 (using digital puffing machine with puff durations of 4 seconds).

7

the lack of consensus as to how to mimic human smoking patterns for purposes of measuring the effects of combustible cigarettes,[4] something doctors and scientists have been studying much longer than the effects of JUUL.

Further complicating the comparison between the nicotine delivered by JUULpods and by cigarettes are questions about how quickly nicotine is absorbed into the bloodstream of users and how long it remains there. As JUUL has openly promoted, for example, one of its goals in designing the JUUL ENDS was to more closely mimic the "nicotine hit" experienced by smokers of traditional cigarettes as nicotine enters their bloodstream. (*See generally* Compl. ¶¶ 46-49; *see also, e.g.*, ECF No. 1-8 at 52.) While the JUUL ENDS may approach the levels and rate of nicotine delivery of combustible cigarettes, the levels and rate of nicotine delivery of combustible cigarettes are not *identical* to that of the JUUL ENDS. This discrepancy is likely to underlie significant dispute in the MDL about how properly to compare the nicotine delivery of JUULpods and combustible cigarettes.

    **B.**    **None of the MDL's Complex Issues Are at Issue in *Breathe DC v. JUUL*.**

None of the scientific issues described above is material to Breathe DC's claim against JUUL. Breathe DC's lawsuit is not a personal injury action and is not materially related to whether JUUL has marketed its products in a manner designed to attract minors or whether JUUL's products promote nicotine addiction. Nor is Breathe DC's claim rooted in whether one "5.0% nicotine strength" JUULpod is the inhalation equivalent of a pack of cigarettes. Instead, Breathe DC notes that JUUL's disclosure about the nicotine comparison between JUULpods and cigarettes appears only in small, nondescript type on the back of the 5.0% JUULpod packaging, and nowhere on the

---

[4] *See, e.g.*, James P. Zacny, *Human Smoking Patterns*, in Smoking and Tobacco Control Monograph 7: The FTC Cigarette Test Method for Determining Tar, Nicotine and Carbon Monoxide Yields of Cigarettes, Report of the NCI Expert Committee 151 (Dep't. Health and Hum. Servs. ed., 1996), *available at* https://cancercontrol.cancer.gov/Brp/TCRB/monographs/7/m7_11.pdf.

8

3.0% JUULpod packaging (*Breathe DC v. JUUL* Compl. ¶ 28)—while its deceptive 3.0% and 5.0% representations feature prominently on the front of the packaging, misleading District of Columbia consumers into believing that JUULpods are a low-nicotine option (*e.g.*, *id.* ¶¶ 5-8). Breathe DC relies on the principle that "reasonable consumers [are not] expected to look beyond misleading representations on the front of the box to discover the truth from . . . small print on the side of the box"—or, in this case, the back of the package, or only on the packaging of a separate product—to make out its claim. *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939-40 (9th Cir. 2008).

Breathe DC's claim likewise involves the allegation that "JUULpods contain among the highest concentrations of nicotine of commercially available electronic cigarette products." (*Breathe DC v. JUUL* Compl. ¶ 7.) To the extent that allegation also appears in the MDL cases, it is not a fact that JUUL contests; the central design innovation of the JUUL ENDS is its "patented use of a 'nicotine salt liquid formulation for generating an inhalable aerosol in an electronic cigarette'." (*Id.* ¶ 36. (quoting Nicotine salt formulations for aerosol devices and methods thereof, CA2909967A1 (filed May 6, 2013), https://patents.google.com/patent/CA2909967A1/en).) "As a JUUL research and design engineer explained in a 2015 interview with *Wired* magazine, certain acids 'help stabilize the nicotine in such a way that makes it . . . I've got to choose the words carefully here: Appropriate for inhalation'." (*Id.* ¶ 39 (quoting David Pierce, *This Might Just Be the First Great E-Cig*, Wired (Apr. 21, 2015), https://www.wired.com/2015/04/pax-juul-ecig/).) This innovation enabled JUUL, by its own admission, to include substantially more nicotine in its liquid solutions than comparable products. (*See generally* ¶¶ 36-49.)

The sole material factual issue contested in *Breathe DC v. JUUL Labs* is whether—given that a single "5.0% nicotine strength" JUULpod delivers as much nicotine as an entire pack of 20 combustible cigarettes, and that JUULpods in fact contain among the highest concentrations of

9

nicotine of commercially available electronic cigarette products—reasonable consumers in the District of Columbia would tend to be misled by the labelling of JUULpods as either "5.0% nicotine strength" or "3.0% nicotine strength," in violation of the DC CPPA. Determination of this issue will not necessitate extensive discovery in its own right, as it is primarily a question for a jury. Thus, there are no complex factual issues that overlap between Breathe DC's claim and the MDL claims.

| II. | Breathe DC's Lawsuit Is Not a Putative Class Action or Personal-Injury Action, and Seeks Only Injunctive Relief. |
|---|---|

The pretrial procedures necessary in *Breathe DC v. JUUL* also differ substantially from those in the MDL because (1) Breathe DC is not pursuing a putative class action or personal-injury action, and (2) Breathe DC seeks only injunctive relief, unlike the MDL plaintiffs, who seek monetary relief.

By virtue of its status as a nonprofit public-interest organization, Breathe DC is uniquely positioned under the DC CPPA, which allows it to pursue a private-attorney-general action on behalf of the general public of the District of Columbia, as opposed to specific consumers. As the District of Columbia Practice Manual outlines, the procedural differences between private attorney general actions and class actions are significant. *See* District of Columbia Practice Manual, Consumer Protection, at 224 (2015 Ed.). Unlike the class plaintiffs in the MDL, Breathe DC need not engage in a class certification motion practice, and it can also avoid the possible bifurcation of discovery into distinct class and merits phases. *See id.* Moreover, in the event Breathe DC reaches a settlement with JUUL, such a settlement will not require judicial scrutiny, while settlement between JUUL and the class plaintiffs in the MDL will require both judicial and class scrutiny. *See id.* Transferring Breathe DC's single cause of action to the MDL would, again, serve no purpose, except perhaps to convenience JUUL at the expense of the just and efficient conduct of the *Breathe DC v. JUUL Labs* action.

10

Furthermore, as a basis for transferring cases to the MDL, JUUL has repeatedly relied upon plaintiffs in those cases and the MDL "each seek[ing] monetary recovery (damages or civil penalties)." (*See, e.g.*, ECF No. 260 at 4; ECF No. 284 at 3 ("The *Beyer* action seeks monetary recovery, like the MDL actions"); (ECF No. 334 at 5 ("The *May* action seeks monetary recovery, like the MDL actions"); ECF No. 345 at 5 ("The *Lewis* action seeks monetary recovery, like the MDL actions").) The Breathe DC action ***does not*** seek monetary recovery, unlike the MDL actions. The voluminous discovery likely to be required in the consolidated cases is unlikely to be relevant to Breathe D.C.'s single cause of action, which underscores that transfer is unwarranted. *Cf. Ranger Ins. Ltd. v. BP PLC* (*In re Oil Spill by the Oil Rig Deepwater Horizon*), 764 F. Supp. 2d 1352, 1353 (J.P.M.L. 2011) (stating that Panel would decline to transfer declaratory judgment insurance actions when they appeared to present issues that require little discovery, while transfer might be warranted for actions relying on same factual discovery as those already centralized).

## CONCLUSION

For the reasons stated herein, Breathe DC respectfully requests that the Panel vacate CTO-24, permitting Breathe DC's District-specific action for injunctive relief, under District law, on behalf of District consumers, to proceed in the jurisdiction in which it was filed, the District of Columbia.

Dated: March 23, 2020

Respectfully submitted,

**RICHMAN LAW GROUP**

Kim E. Richman (D.C. Bar No. 1022978)
Randal K. Wilhite (*pro hac vice* forthcoming)
8 W. 126th Street
New York, NY 11207
T: (718) 705-4579 | F: (718) 228-8522
krichman@richmanlawgroup.com
rwilhite@richmanlawgroup.com

11

**ACTION ON SMOKING & HEALTH**

_____
Chris A. Bostic (D.C. Bar No. 480251)
Kelsey Romeo-Stuppy (*pro hac vice* forthcoming)
1250 Connecticut Ave, NW, 7th Fl.
Washington, DC 20036
T: (202) 659-4310
bosticc@ash.org
romeo-stuppyk@ash.org

*Attorneys for Plaintiff*

12